REQUESTED BY: Dear Senator:
You have inquired about the validity of the amendments to LB 131 found on page 1671 of the Legislative Journal. You particularly ask whether it is too vague. We believe the bill, as amended, is quite unclear, and we have serious question as to whether the bill, as amended, actually expresses the intentions of the drafters.
Section 2 of the bill now provides:
 "Each county shall reappraise all lands and improvements in such county on or before January 1, 1978. The Tax Commissioner shall by rule establish standards for such reappraisal. The standards shall be such as to insure the determination of actual value on a consistent basis in accordance with the formula prescribed in section 77-112, Revised Statutes Supplement, 1976."
Section 3 of the bill provides for approval of the reappraisals by the Tax Commissioner. Section 4 provides the right of appeal by aggrieved taxpayers. Section 5 provides that counties may enter into reappraisal contracts as provided in Chapter 77, Article 13. Section 6 provides for penalties for counties that do not reappraise by January 1, 1978, and further penalties for those who do not reappraise by 1979, 1980, and subsequent years.
The bill seems to say in quite unambiguous language that all 93 counties in the state shall reappraise all lands and improvements between the effective date of the act, if it passes, and January 1, 1978. We are not sure exactly what type of reappraisal the drafters of the amendment had in mind, but it is manifestly impossible for all counties, or, perhaps, any county, to complete a meaningful reappraisal in that period of time. Reappraisals done by professional appraisal firms have generally taken several years to complete. Furthermore, most counties have had their real estate reappraised pursuant to sections 77-1301.01 to77-1301.07. Some of these reappraisals have recently been put into effect. This bill would, apparently, require all of these reappraisals to be scrapped, and new ones made before next January.
We cannot believe that this is the real intention of the bill. We assume that the real intention is to force those few counties which have not completed reappraisals pursuant to sections 77-1301.01 to 77-1301.07 to do so, and put them into effect for next year. If that is the intention, it has not been expressed in the bill, as amended.
We do not believe your questions about the imposition of penalties raise any constitutional problems. The bill provides for approval of reappraisals by the Tax Commissioner. A refusal on his part to approve a valid reappraisal would be subject to appeal to the courts. If a county submits a reappraisal which he rejects, and his rejection is sustained by the courts, it would be perfectly proper, as a constitutional matter, for the Legislature to penalize the county, even though it acted in good faith. In the event the court reversed the Tax Commissioner, and accepted the reappraisal, we assume no penalty would be assessed.
Sections 7 and 8 of the bill would limit the amount of budgets of political subdivisions levying taxes. Similar provisions were contained in a previous version of the bill, which we discussed in an opinion to Senator Koch dated March 22, 1977. Some of the same ambiguities we called attention to are still present in sections 7 and 8 of this version of the bill.
Section 7 provides in part:
 "Every political subdivision authorized to levy a tax shall adjust that portion of its budget for operating and maintenance purposes for the upcoming fiscal year so as not to exceed seven per cent of the previous year's budget funded by ad valorem taxes or the average increase by percentage for the three such preceding budgets, whichever is greater. . . ."
We are confident that this provision does not express the real intention of the drafters of the amendment. It seems to say that the budget (or the part of it for operating and maintenance purposes) shall not exceed seven per cent of the previous year's budget. What was intended, we believe, was that the increase in the budget should not exceed seven per cent. To illustrate what we mean, suppose the previous year's budget was one million dollars. Under section 7, as written, the current year's budget for operating and maintenance purposes could not exceed seventy thousand dollars. This surely cannot be the intention, but it is what is said.
We pointed out in our opinion of February 10, 1977, to Senator DeCamp, that the court might find a budgetary limitation based upon the previous year's budget to be unreasonable classification, since it appears to permanently freeze budgets on the basis of the budget in effect on the effective date of the act, which might have no relationship to budgetary needs in the future, and two identical taxing entities might have different budgetary limitations, based upon what are essentially irrelevant considerations.
Section 8 of the bill is an apparent attempt to permit an escape from the budgetary limitations of section 7, which probably would take care of the constitutional question we just discussed. However, it fails to accomplish its purpose. It provides that if any political subdivision determines that a budget higher than permitted by section 7 is needed, it shall hold a public hearing to receive input from the public regarding the advisability of exceeding the limits prescribed by section 7. Nowhere in section 8, however, do we find authorization to exceed the limitations imposed by section 7, even after the hearing. The section provides for the hearing, but does not provide for any action by the governing body as a result of the hearing. Therefore, the limitations of section 7 would still be applicable, and the hearing prescribed by section 8 would be futile.
In summary, we believe that the amended bill fails in a number of ways to adequately express what is intended, and that, if interpreted literally, would require impossible actions or disastrous results.